UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SONJA M. OVERALL, individually, and
SONJA M. OVERALL, Personal Representative
of the ESTATE OF ERIC BRIAN OVERALL,

    Plaintiff,

v.

Case No. 20:20-cv-12869
Hon. Sean F. Cox

OAKLAND COUNTY, LAPEER COUNTY,
GENESEE COUNTY, KENNETH PAUL,
CHRISTOPHER BOSHELL, CHRISTOPHER
BOWMAN, HARRY LUTZE, and CHRISTOPHER
BERAK,

    Defendants.
_____/
SICILIANO MYCHALOWYCH
AND VAN DUSEN, PLC
Andrew W. Mychalowych (P39602)
Cora A. Morgan (P59104)
Attorneys for Plaintiff
40950 Woodward Ave., Ste. 350
Bloomfield Hills, MI 48304
(248) 442-0510
amychalowych@smv-law.com
cmorgan@smv-law.com
_____/

**FIRST AMENDED COMPLAINT**

    NOW COMES Plaintiff, Sonja M. Overall ("Overall") individually, and Sonja

M. Overall, Personal Representative of the Estate of Eric Brian Overall ("Estate"),

by and through her attorneys, Siciliano Mychalowych and Van Dusen, PLC, and for her First Amended Complaint, hereby states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action because a federal question exists in this case pursuant to 28 U.S.C. §1331.

2. Plaintiff sues for violation of Eric Brian Overall's ("Deputy Overall") civil rights pursuant to 42 U.S.C. §1983.

3. Plaintiff also seeks to redress the violations of Deputy Overall's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, Sec. 7 of the Constitution of the State of Michigan.

4. This Court has supplemental jurisdiction over the state law claims pleaded in this action pursuant to 28 U.S.C. §1367(a) because such claims are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."

5. Venue is proper in the Eastern District of Michigan, as the injury causing death occurred in Brandon Township, Michigan, which is located within this District.

6. That amount in controversy in this matter is in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of attorneys' fees, costs, and interest.

7. That this Court has subject matter jurisdiction over this action.

8. That venue is proper in this Court.

**PARTIES**

9. The Estate of Eric Brian Overall is currently pending in the Oakland County Probate Court, Case No. 2018-380141-DE.

10. Plaintiff Sonja Overall is a citizen of the State of Michigan, the wife of Deputy Overall, and the duly appointed Personal Representative of his Estate of for the purpose of pursuing this claim individually and on behalf of the Estate under the Wrongful Death Act, MCL 600.2922.

11. Plaintiff Sonja Overall sues as Deputy Overall's successor in interest to prosecute an action for violation of his rights to due process of law and for his wrongful death. She also sues on behalf of herself and Deputy Overall's surviving family members, Kenneth Cole Overall, Denise Huston, and Kenneth Christopher Overall, for their loss of Deputy Overall's love, society, companionship, affection, services, and support, together with any other damages allowable under the Wrongful Death Act, MCL 600.2922.

12. At the time of the events giving rise to this action, Defendant Kenneth Paul ("Defendant Paul") was a citizen of the State of Michigan and was acting in his individual capacity and under the color of state law within the course and scope of his employment as a Sheriff's Deputy for the County of Lapeer.

13. At the time of the events giving rise to this action, Defendant Chris Boshell ("Defendant Boshell") was a citizen of the State of Michigan and was acting in his individual capacity and under the color of state law within the course and scope of his employment as a Sheriff's Deputy for the County of Lapeer.

14. At the time of the events giving rise to this action, Defendant Chris Bowman ("Defendant Bowman") was a citizen of the State of Michigan and was acting in his individual capacity and under the color of state law within the course and scope of his employment as a Sheriff's Deputy for the County of Lapeer. (e and Reserve Deputy Eric Shaw joined pursuit on I69 West towards Davidson…caught up with the pursuing vehicles as they exited onto M15 following the suspect vehicle. They followed the pursuit at a slight distance. "The pursuit was at near posted speeds throughout the entire event." p. 12-13 of 20 of Lapeer police report)

15. At the time of the events giving rise to this action, Defendant Harry Lutze ("Defendant Lutze") was a citizen of the State of Michigan and was acting in his individual capacity and under the color of state law within the course and scope of his employment as a Sergeant with the Sheriff's Department for the County of Lapeer.

16. Oakland County is a governmental entity located within the State of Michigan.

17. Lapeer County is a governmental entity located within the State of Michigan.

18. Genesee County is a governmental entity located within the State of Michigan.

19. At the time of the events giving rise to this action, Defendant Christopher Berak ("Defendant Berak") was a citizen of the State of Michigan.

20. All Defendants acted under color of law in committing the acts complained of herein.

## FACTUAL BACKGROUND

21. Plaintiff hereby incorporates the preceding paragraphs by reference.

22. On the evening of November 22, 2017, Deputy Overall was performing duties in the course of his employment with the Oakland County Sheriff's Department.

23. At approximately 11:50 p.m. on that date, Defendant Paul was at the Lapeer County Sheriff's office, typing reports, when Defendant Boshell received a call from the Lapeer County Jail.

24. The caller stated that there was somebody in the jail lobby "not making a lot of sense, kind of moving around frantically." (Ex. 1, p. 17:34-7).

25. Defendant Paul indicated that he, his Explorer (recruit) Blake Volz, and Defendant Boshell went outside and located the disruptive person, later identified as

5

Defendant Berak, in a blue Saturn vehicle that was parked in front of the jail lobby doors.

26. As Defendant Paul, Explorer Volz, and Defendant Boshell approached the Saturn, Defendant Berak drove away "in a hurry," hopping the curb in the parking lot as he looped back towards the parking lot exit (Ex. 1, p. 19:20).

27. Defendants Paul and Boshell then got into their patrol cars to follow Defendant Berak.

28. Defendant Berak then returned to the jail parking lot.

29. Defendant Paul followed Defendant Berak, activating his police cruiser's overhead lights in the parking lot. Defendant Boshell parked his cruiser behind Defendant Paul's cruiser in the parking lot.

30. Defendants Paul and Boshell approached Defendant Berak's vehicle and asked for his identification.

31. Defendant Berak did not provide his identification, nor did he put his vehicle in park, as he was instructed to do.

32. Defendant Berak told Defendants Paul and Boshell he was leaving, and he left the parking lot in his vehicle.

33. Defendants Paul and Boshell gave chase to Defendant Berak's vehicle.

34. Defendant Berak entered westbound I-69. Defendants Paul and Boshell followed him in their police cruisers.

6

35. Defendant Paul testified that Defendant Berak was "keeping it [his vehicle] within his lane and close to the posted speed limit." (Ex. 1 p. 25:12-15).

36. Defendant Paul initiated a traffic stop by activating his police cruiser's overhead lights. Defendant Boshell also participated in the traffic stop.

37. Defendant Berak pulled his vehicle over to the right-hand shoulder of the highway.

38. Defendant Paul again asked for Defendant Berak's identification. Defendant Paul also instructed Defendant Berak to put the vehicle in park and turn it off.

39. Defendant Berak refused to follow Defendant Paul's instructions and again drove off.

40. As Defendant Berak was accelerating, Defendant Paul swung his flashlight at Defendant Berak's window to try to break the window.

41. Defendant Paul returned to his police cruiser, notified dispatch that Defendant Berak had taken off again, activated his vehicle's siren and lights, and gave chase again.

42. Defendant Boshell also activated his vehicle's siren and lights and gave chase.

43. During law enforcement's contacts with Defendant Berak on November 22 and 23, 2017, he uttered numerous statements that made it clear that he

7

was a suicidal, mentally ill and/or mentally disturbed individual who was in crisis, including claiming that he was God, that he needed to free his "son" (an inmate at the Lapeer County Jail), that since he was God, laws do not apply to him and that he was going to take off his seat belt and run his car into a tree to kill himself.

44. Defendants Paul and Boshell followed Defendant Berak on westbound I-69 until the vehicles approached M-15.

45. Defendant Paul testified that Defendant Berak continued to drive "near posted speed limits and keeping it within his lane." (Ex. 1 p. 29:1-4)

46. Defendant Berak approached the end of the exit ramp onto M-15, drove through the median and into the southbound M-15 lane, and kept driving.

47. Defendants Paul and Boshell followed Defendant Berak onto southbound M-15.

48. After Defendant Berak entered southbound M-15, he continued to drive "within posted speed limits and still staying in his lane." (Ex. 1, p. 30:19-21)

49. When Defendant Paul's and Defendant Berak's vehicles approached Lippincott Boulevard, Defendant Berak moved to the through lane and continued southbound.

50. Defendants Paul and Boshell continued to follow Defendant Berak with their lights and sirens activated. Defendant Berak was driving "close to" the posted speed limit. (Ex.1, p. 31:5-9)

51. Defendant Lutze instructed Lapeer County dispatch to instruct an officer from the Oakland County Sheriff's Department to deploy stop sticks or spike strips to incapacitate Defendant Berak's vehicle, even though Defendant Berak was driving near or at the posted speed limits, within his lane, and did not pose a danger to other members of the community.

52. Defendant Berak drove through Ortonville at the posted speed limit and within his lane (Ex. 1, p. 32:17-23).

53. A fully marked Genesee County Sheriff's Department patrol car with its overhead lights on was parked on the east side of M-15, facing northbound, when Defendant Paul and Defendant Berak passed by in Genesee County.

54. Several Genesee County officers also gave chase to Defendant Berak's vehicle with lights and sirens activated.

55. Lapeer County dispatch notified Defendants Paul and Boshell that an Oakland County Sheriff's Department officer had set up stop sticks or spike strips at Seymour Lake Rd. and M-15.

56. As Defendants Paul and Bowman approached the intersection at Seymour Lake Rd. and M-15, they notified dispatch that they were backing off.

57. Defendant Paul testified he could see the Oakland County Sheriff's Department patrol car at the intersection with its lights on (Ex. 1,p. 34:1-2).

58. When Defendant Berak arrived at the intersection, he braked and intentionally steered his vehicle to the right of the roadway, striking Deputy Overall, who was standing on the west-side shoulder of the road.

59. Deputy Overall died on November 23, 2017, as a result of the impact from Defendant Berak's vehicle.

60. Defendant Berak was later convicted of first degree murder in the Oakland County Circuit Court for the death of Deputy Overall.

61. Defendants' acts of gross negligence, wanton, willful and intentional conduct, and deliberate indifference to the violations of Deputy Overall's constitutional rights were the proximate and legal cause of Deputy Overall's death on November 23, 2017.

## COUNT I—VIOLATION OF 42 U.S.C. §1983

62. Plaintiff hereby incorporates the preceding paragraphs by reference.

63. Defendants deprived Deputy Overall of his civil, constitutional and statutory rights under color of law and are liable to Plaintiff under 42 U.S.C. §1983.

64. Defendants' conduct also deprived Deputy Overall of his right to due process of law pursuant to the Fifth and Fourteenth Amendments to the United States Constitution, and pursuant to Article 1, Section 7 of the Michigan Constitution.

65. Lapeer County acted with deliberate indifference when it had a policy of failing to train its officers regarding slow speed pursuits and those actions or failure to act constituted gross negligence, wanton, willful, and intentional conduct.

66. Lapeer County acted with deliberate indifference when it had a policy of failing to train its officers not to activate their police cruisers' lights and sirens when pursuing suicidal, mentally ill, and/or mentally disturbed individuals in crisis and those actions or failure to act constituted gross negligence, wanton, willful, and intentional conduct.

67. Lapeer County's policy of pursuing suicidal, mentally ill, and/or mentally disturbed individuals in crisis with activated police cruiser lights and sirens agitated Defendant Berak, leading to Deputy Overall's death.

68. Lapeer County's failure to train its officers caused a violation of Deputy Overall's constitutional rights and it was obvious that said failure could lead to a constitutional violation.

69. Video of the incident shows that the stop sticks or spike strips were not properly deployed by Deputy Overall as a result of lack of training.

70. Oakland County acted with deliberate indifference, gross negligence, and wanton, willful, and intentional conduct when it had a policy of continuing to utilize stop sticks or spike strips, when numerous police departments across the

country have discontinued their use due to the danger they pose to law enforcement officers.

71. Oakland County acted with deliberate indifference when it had a policy of failing to train its officers in the safe deployment of stop sticks or spike strips, and those actions or failure to act constituted gross negligence, wanton, willful, and intentional conduct.

72. Oakland County acted with deliberate indifference when it had a policy of failing to train its officers not to activate their police cruisers' lights when deploying stop sticks or spike strips, and those actions or failure to act constituted gross negligence, and wanton, willful, and intentional conduct.

73. The risk to Deputy Overall was so obvious that Oakland County had to have known about it, Oakland County had actual knowledge that an injury was certain to occur, and it willfully disregarded that knowledge.

74. Oakland County's failure to train its officers in the safe deployment of stop sticks or spike strips caused a violation of Deputy Overall's constitutional rights and it was obvious that said failure could lead to a constitutional violation.

75. Upon information and belief, Oakland County has not permitted its officers to keep stop sticks or spike strips in their police cruisers since Deputy Overall's death, due to the inherent danger stop sticks and spike strips pose to their officers and to the general public.

76. That the pursuit procedures applied by Oakland, Lapeer, and Genesee Counties were not reasonable and those actions or failure to act constituted deliberate indifference, gross negligence, and wanton, willful, and intentional conduct.

77. Under the circumstances, including the fact that the pursuit was a slow speed pursuit and the length of time and distance of the pursuit, alternative options were available, including the precision immobilization technique ("PIT"), and should have been employed by the officers involved in the pursuit, but they failed to do so, and Deputy Overall's death resulted from their failure to employ those alternatives.

78. Genesee County acted with deliberate indifference when it had a policy of failing to train its officers with regard to slow speed pursuits and those actions or failure to act constituted gross negligence, and wanton, willful, and intentional conduct.

79. Genesee County acted with deliberate indifference when it had a policy of failing to train its officers not to activate their police cruisers' lights and sirens when pursuing suicidal, mentally ill, and/mentally disturbed individuals in crisis and those actions or failure to act constituted gross negligence, and wanton, willful, and intentional conduct.

80. Genesee County's failure to train its officers regarding suicidal, mentally ill, and/mentally disturbed individuals in crisis caused a violation of Deputy

Overall's constitutional rights and it was obvious that said failure could lead to a constitutional violation.

81. That the communications between Lapeer, Oakland, and Genesee County during the incident were disorganized and disjointed, caused confusion, and contributed to Deputy Overall's death.

82. Plaintiff has been damaged as a result of Defendants' wrongful acts.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor against Defendants in an amount greatly in excess of Seventy-Five Thousand Dollars ($75,000.00), plus punitive damages, attorneys' fees, costs, and interest.

### COUNT II—GROSS NEGLIGENCE

83. Plaintiff hereby incorporates the preceding paragraphs by reference.

84. On the above mentioned date, at the above mentioned place, Defendants Paul, Boshell, Bowman, and Lutze owed Deputy Overall a duty to not act in a grossly negligent manner, to act prudently and with reasonable care, to refrain some endangering their fellow law enforcement officer, and to refrain from conduct so reckless as to demonstrate a lack of concern for whether an injury could result.

85. Defendants Paul, Boshell, and Bowman grossly breached their duties of care and created a danger to their fellow law enforcement officer, Deputy Overall, when they pursued Defendant Berak with their overhead lights and sirens on when he was not speeding or driving erratically, and he did not present a danger to others.

86. Defendant Lutze grossly breached his duty of care and created a danger to Deputy Overall when Defendant Lutze, through dispatch, instructed Deputy Overall to utilize stop sticks or spike strips to stop Defendant Berak, when he was not speeding or driving erratically and he did not present a danger to others.

87. The acts and omissions of Defendants Paul, Boshell, Bowman, and Lutze, as set forth in this Complaint, as well as those acts and omissions that may be revealed during discovery, constitute conduct so reckless as to demonstrate a total lack of concern for whether an injury could result.

88. The acts and omissions of Defendants Paul, Boshell, Bowman, and Lutze constitute gross negligence as set forth in MCL 691.1407(2)(c) and MCL 691.1407(8)(a) and those acts or omissions also constituted wanton, willful, and intentional conduct.

89. Neither Plaintiff Sonja Overall nor Deputy Overall were comparatively or contributorily negligent.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor against Defendants in an amount greatly in excess of Seventy-

Five Thousand Dollars ($75,000.00), plus punitive damages, attorneys' fees, costs, and interest.

## DAMAGES

90. As the proximate result of Defendants' gross negligence, deliberate indifference, and wanton, willful, and intentional conduct as set forth in this Complaint and as may be further revealed during discovery, decedent Deputy Overall suffered catastrophic injuries that led to his death, including, but not limited to: blunt force injuries, crushing injuries to the skull and brain, subscalpular hemorrhage, fractures of the left tibia and fibula, blood aspiration in both lungs, and multiple lacerations, abrasions, and contusions.

91. As the direct and proximate cause of Defendants' gross negligence, deliberate indifference, and wanton, willful, and intentional conduct Deputy Overall suffered:

    a. Severe physical pain and suffering while conscious between the time when Deputy Overall's injuries were inflicted and when he died;

    b. Death;

    c. Mental anguish and emotional distress, including fear and anxiety;

    d. A loss of the normal enjoyments of life;

    e. Economic loss;

    f. Any other damages revealed during the course of discovery.

92. As the direct and proximate cause of Defendants' gross negligence, deliberate indifference, and wanton, willful, and intentional conduct, Deputy Overall's surviving family members Sonja Overall, Kenneth Cole Overall, Denise Huston, and Kenneth Christopher Overall have suffered the loss of Deputy Overall's love, society, companionship, affection, services, and support, together with any other damages allowable under the Wrongful Death Act, MCL 600.2922 *et. seq*.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor against Defendants in an amount greatly in excess of Seventy-Five Thousand Dollars ($75,000.00), plus punitive damages, attorneys' fees, costs, and interest.

Respectfully submitted,

SICILIANO MYCHALOWYCH & VAN DUSEN, PLC

By: /s/Andrew W. Mychalowych
Andrew W. Mychalowych (P39602)
Cora L. Morgan (P59104)
Attorneys for Plaintiff
40950 Woodward Ave., Ste. 350
Bloomfield Hills, MI 48304
(248) 442-0510