UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SONJA M. OVERALL,

    Plaintiff,

v.                                Case No. 20-12869

OAKLAND COUNTY, *et al.*,      Sean F. Cox
                                          United States District Court Judge

    Defendants.
_____/

## ORDER DENYING
## PLAINTIFF'S MOTION FOR RECONSIDERATION

This case arises from the tragic death of Eric Overall, a Deputy with the Oakland County Sheriff's Office, that occurred on November 23, 2017. Deputy Overall was killed in the line of duty, while assisting Lapeer County sheriff's deputies in their attempt to stop a vehicle being driven by Defendant Christopher Berak ("Berak"). During the course of that high speed police pursuit, Berak steered his vehicle off the road and directly into Deputy Overall (who was standing to the side of road attempting to deploy stop sticks), killing Deputy Overall. Plaintiff Sonja M. Overall, individually and as Personal Representative of the Estate of Deputy Overall ("Plaintiff") filed this § 1983 action, asserting claims against a number of Defendants.

After the close of discovery, the matter came before this Court on summary judgment motions filed by Defendant Oakland County and the Lapeer County Defendants. After full briefing of the issues, and oral argument, this Court granted summary judgment in favor of Oakland County and the Lapeer County Defendants, as to all claims asserted against them, in an Opinion and Order issued on April 26, 2023.

On May 10, 2023, Plaintiff filed a Motion for Reconsideration. (ECF No. 182). Plaintiff asserts that this Court erred in two respects. First, Plaintiff contends that the Court's characterization of the pursuit in this case as a high speed police chase "is inconsistent with the facts and the law." (Pl.'s Br. at 4). Second, Plaintiff asserts that the Court erred in not addressing her "failure-to-train claims" against Oakland County and Lapeer County.

Local Rule 7.1(h) of the Local Rules for the Eastern District of Michigan governs motions for rehearing or reconsideration and provides, in pertinent part, that:

> (2) Non-Final Orders. Motions for reconsideration of non-final orders are disfavored. They must be filed within 14 days after entry of the order and may be brought only upon the following grounds:
>
> > (A) The court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision;

E.D. Mich. LR 7.1(h)(2).

As explained in *Fisher*, a "motion for reconsideration that merely reasserts the same facts and legal arguments previously asserted is not proper unless there was some defect in the first hearing by which the court and the parties have been misled. *Fisher v. United States*, 589 F.Supp.3d 726, 728 (E.D. Mich. 2022, Luddington, J.) (Collecting cases). "Nor is a motion for reconsideration a second opportunity for a party to present 'new explanations, legal theories, or proofs.'" *Jinks v. AlliedSignal, Inc.*, 250 F.3d 381, 385 (6th Cir. 2001). In other words, such motions cannot be used as a vehicle to introduce new evidence or arguments that could have been presented to the Court during pendency of the summary judgment motion. *Macdermid Inc. v. Electrochemicals, Inc.,* 1998 WL 165137 at *6 n.7 (6th Cir. 1998) (citing *Rothwell Cotton Co. v. Rosenthal & Col.*, 827 F.2d 246, 251 (7th Cir. 1987)).

The Court finds that Plaintiff has failed to make the required showing as to either of the two arguments presented in her Motion for Reconsideration.

In addressing Plaintiff's substantive due process claim (brought under a state-created danger theory) against Oakland County and Lapeer County, this Court explained that in *Doe*, the Sixth Circuit:

> addressed the question of "What is 'the requisite culpability to establish a substantive due process violation?'" *Id.* It began by noting that the "Supreme Court has told us that the Constitution *sets a high bar* for this sort of constitutional tort." *Id.* (emphasis added). The "Supreme Court has held than an executive actor's conduct violates the Due Process Clause only if it is 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Doe,* 954 F.3d at 933. In other words, "only *extreme misconduct* will violate the clause." *Id*. (emphasis added). An "actual intent to injure is required when public actors must make hasty decisions, such as during a high-speed chase or a prison riot." *Doe*, 954 F.3d at 933 (citing *Lewis, supra*).

(4/26/23 Opinion & Order at 25). This Court then concluded that standard applies here, explaining:

> In seeking to avoid the application of this difficult-to-meet standard, Plaintiff tries to characterize the police pursuit in this case as a "slow-speed" police pursuit. (Pl.'s Br., ECF No. 136, at 28 & 30). That is not so. The police pursuit in this case reached speeds of 70 miles per hour and more. Such speeds constitute high speed police chases. *See, eg., Jones v. Byrnes,* 585 F.3d 971, 974 (6th Cir. 2009) (Applying *Lewis's* shocks-the-conscience standard in case where the police chase at issue "reach[ed] sixty to seventy miles per hour.")

(*Id.*).

Plaintiff's first argument in her Motion for Reconsideration is that this Court's characterization of the pursuit in this case as a high speed police chase "is inconsistent with the facts and the law." (Pl.'s Br. at 4).

As to this first argument, Plaintiff improperly seeks to introduce both new evidence and new legal arguments and case law that could have been presented to the Court during the

3

pendency of the summary judgment motion. This alone is a sufficient basis to deny the motion as to this issue.

Moreover, Plaintiff's new arguments are not persuasive in any event. Plaintiff contends that there "is no black letter rule that says what constitutes a high-speed police chase" for purposes of her substantive due process claim. Plaintiff then directs the Court to several cases, suggesting that they support her argument that the pursuit here was not a high-speed pursuit. Notably, however, the cases that Plaintiff now cites are not cases involving substantive due process claims under a state-created danger theory. Rather, they are cases analyzing qualified immunity arguments in relation to excessive-force claims involving motor vehicles. Those cases are not analogous and do not aid Plaintiff's position.

This Court continues to conclude that the police pursuit in this case, that involved police officers pursuing an erratic driver, who was not making sense and claiming to be "God," and had been making suicidal statements, at night time while it was dark outside, with speeds reaching 70 miles per hour, was a high-speed chase that is governed by the standard this Court applied in its Opinion and Order.

Next, Plaintiff asserts that this Court erred by not addressing Plaintiff's "failure-to-train claims" against Oakland County and Lapeer County in its Opinion and Order. Plaintiff asserts that this Court's decision regarding Plaintiff's substantive due process claim, brought under a state-created danger theory, "has no bearing on Plaintiff's claim against Defendants for their failure to train." (Pl.'s Br. at 1). Plaintiff appears to believe that she can maintain a separate claim under § 1983 for "failure to train," that is divorced from an underlying constitutional violation.

Plaintiff is mistaken. *"Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation. *See Monell*, 436 U.S. at 694, 98 S.Ct. 2018 (involving a policy that was 'the moving force of the constitutional violation'); *see also City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (involving a failure to train municipal employees that led to the constitutional injury)." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006); *see also Smith v. Packnett,* 339 F. App'x 389, 393 n.1 (5th Cir. 2009) (Explaining that "the failure to train an employee is not itself a violation of the Constitution; it is instead a basis for holding an employer liable when an employee violates the Constitution."); *Galka v. Willaims*, 2020 WL 7046816 at *2 (N.D. Ohio 2020) ("Failure to train is not a freestanding cause of action," but rather one of the ways in which a supervisor or municipality may be held liable in a civil rights action for the constitutional violations of employees.); *Templeton v. Brandt*, 2021 WL 1312617 at *6 (S.D. Ohio 2021) ("'Failure to train' is not in and of itself a constitutional violation. Rather, a failure-to-train theory is one way in which a governmental entity can become liable for the actions of its agents. *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). Thus, for example, if Brandt violated Templeton's constitutional rights, and Templeton wanted to collect damages against the County for that violation, one way in which Templeton could do so would be to show that Brandt's violation resulted from the County's failure to train Brandt."); *Thieneman v. Smith*, 2018 WL 1522357 at *4 (W.D. Ky. 2018) (failure to train is not a freestanding claim); *Bonchek v. Nicolet Unified Sch. Dist.*, 2019 WL 7049803 at *5 n.3 (E.D. Wisc. 2019) (It appears that Plaintiff "believes that failure-to-train

5

is a stand-alone Section 1983 claim, divorced from another, underlying constitutional violation. This is not true. A failure-to-train theory is simply one way a plaintiff can attempt to hold a municipal entity accountable for causing a constitutional violation inflicted by one of its employees. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388–89 (1989).")[1]

Notably, Plaintiff did not assert any § 1983 claims against the individual officers who were named as Defendants in this case. Rather, Plaintiff asserted the § 1983 count against Oakland County and Lapeer County only.

In its April 26, 2023 Opinion and Order, this Court granted summary judgment in favor of both Oakland County and Lapeer County as to Plaintiff's § 1983 count, ruling that:1) any § 1983 claim asserted against the counties based on the Michigan Constitution fails to state a § 1983 claim; 2) Plaintiff has no cognizable Fifth Amendment Due Process claim against either of the counties because that Amendment only applies to federal, not state, conduct; and 3) Plaintiff cannot maintain a substantive-due-process claim against either county, on a "state-created-danger" theory of liability, because Plaintiff cannot establish the culpability required for such a claim. Given those rulings, this Court also properly rejected Plaintiff's municipal liability claim against the counties, that was brought under various theories, including a failure-to-train theory of municipal liability:

D. **Municipal Liability**

---

[1] Nothing in *Russo v. City of Cinncinnati,* 953 F.2d 1036 (6th Cir. 1992), cited by Plaintiff, supports Plaintiff's belief that she can proceed with a freestanding § 1983 failure-to-train claim. In that case, the plaintiff alleged that individual officers violated her constitutional rights by making a warrantless entry into her apartment, and by using excessive force, and sought to hold the municipality liable for those constitutional violations by the officers under a failure-to-train theory of municipal liability.

6

> Both Lapeer County and Oakland County assert that, even if the Court were to somehow find an underlying constitutional violation, Plaintiff could not establish municipal liability against them – under any of the theories advanced by Plaintiff – in any event.
> Because Plaintiff has no viable underlying constitutional claim against either county, the Court need not consider those arguments. *See, eg., S.L. ex rel. K.L. v. Pierce Twp. Bd. of Trustees*, 771 F.3d 956, 962 (6th Cir. 2014). (Where no underlying constitutional violation occurred, district court did not err in granting summary judgment on municipal liability claim.). That is because there can be no municipal liability where there is no underlying constitutional violation.

(4/26/23 Opinion & Order at 27).

In addition, because Plaintiff does not claim that any individual officers violated his constitutional rights, the counties could not be held liable for constitutional violations of an officer, under a failure-to-train theory.

Accordingly, for all of these reasons, the Court **ORDERS** that Plaintiff's Motion for Reconsideration is **DENIED.**

**IT IS SO ORDERED.**

                                                  s/Sean F. Cox
                                                  Sean F. Cox
                                                  United States District Judge

Dated: May 17, 2023